NOT DESIGNATED FOR PUBLICATION

No. 112,227

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL STEWART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed October 2, 2015. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Sheryl L. Lidtke*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and JOHNSON, S.J.

*Per Curiam*: On January 23, 2004, the district court sentenced Michael Stewart to prison for a term of 110 months and ordered him to pay restitution in the amount of $8,793.87. On March 26, 2014, Stewart filed a "Motion for Release of Record" pointing out that more than 10 years had passed since the entry of the restitution order and under K.S.A. 2013 Supp. 60-2403(d), since no renewal affidavit had been filed and no execution had been issued, the restitution judgment was dormant. The district court summarily denied Stewart any relief on his motion, from which denial Stewart appeals. Because we find that the district court was correct, albeit for the wrong reason, we affirm.

1

In 2003 the State charged Stewart with premeditated, first-degree murder, attempted first-degree murder, criminal possession of a firearm, and aiding a felon. Pursuant to plea negotiations, on December 5, 2003, Stewart entered a no contest plea to an amended charge of reckless, second-degree murder. The district court accepted the plea and found Stewart guilty of that agreed-upon offense.

At sentencing January 23, 2004, the district court followed the plea recommendations. It imposed a downward durational departure sentence of imprisonment for 110 months followed by postrelease supervision for 36 months. The State requested that the court order restitution of $8,793.87, the amount the murder victim's mother had paid for her son's "funeral expenses and . . . cemetery cost[s]." Stewart's attorney confirmed that the requested restitution was part of the plea agreement, stating, "That's correct, your Honor. We don't oppose that." In imposing the restitution the district court simply stated: "I will order restitution in the amount of $8,793.87 plus the court costs."

On March 26, 2014, Stewart filed what he styled a "Motion for Release of Record." The motion itself did not actually request, let alone argue for, any particular relief. To illustrate the vagueness of the issue facing the district court, and now us, we set out the full text of the motion in the following:

> "(1) Defendant was sentenced on January 23, 2004 and as a part of his sentence, he was ordered to pay restitution in the amount of 8,793.87 [*sic*].

> "(2) At the filing of this motion March 18, 2014 a total of 10 years and 2 months has elapsed.

> "(3) Pursuant to K.S.A. 60-2403(D) [*sic*] states [*sic*], if a renewal affidavit is not filed or if execution is not issued, within 10 years from the date of the entry of any

2

judgment of restitution in any court of record in this state, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real-estate of the judgment debtor."

The record on appeal does not contain any response by the State to the motion, nor does the record include any indication that any renewal affidavit had been filed or any execution had been issued.

The district court treated the motion as if it sought some kind of declaration from the court that the restitution judgment had become dormant. Relying on *State v. Robards*, 31 Kan. App. 2d 1138, 1141, 78 P.3d 825 (2003) (the 10-year period within which the State must file a renewal affidavit or execute to prevent the dormancy of a restitution order begins to run on the date the offender is released from incarceration), it held that "since the defendant has not been granted conditional release, the dormancy period has not began." The district court summarily denied the motion. This appeal timely followed.

ANALYSIS

Stewart's claim that he is entitled to some form of relief from his restitution order requires the interpretation of statutes. We exercise unlimited review over such questions of law. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

In spite of Stewart's invocation of K.S.A. 2013 Supp. 60-2403(d) in his motion to the trial court, on appeal Stewart does not actually argue that the restitution order is dormant or "void" (extinguished) under that statute's provisions. Rather, Stewart's appellate counsel makes two arguments:  first, that "the order of restitution imposed by the district court was imposed without statutory jurisdiction and therefore does not conform to the statutes" making it an illegal sentence; second, that the restitution order here can never become enforceable under our Supreme Court's holding in *State v. Alderson*, 299 Kan. 148, 150-51, 322 P.3d 364 (2014). Stewart argues that the restitution

3

order is not even "potentially viable" and asks that we find that the restitution ordered here "is not a judgment" but, per *Alderson*, is "merely an advisory calculation provided for the benefit of the Kansas Prisoner Review Board."

*The order of restitution was not an illegal sentence*

We agree, as Stewart asserts, that an illegal sentence can include one imposed without jurisdiction or one that fails to conform to the character or term of punishment authorized by statute. Stewart cites *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013), for those propositions.

As Stewart acknowledges, though, K.S.A. 2002 Supp. 21-4603d governed sentencing dispositions authorized for his offense. K.S.A. 2002 Supp. 21-4603d(b)(1) specifically provided:

> "In addition to or in lieu of any of the above, the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable. If the court finds a plan of restitution unworkable, the court shall state on the record in detail the reasons therefor."

This statutory language mandates the imposition of restitution unless the court makes a finding that a plan of restitution is unworkable. The district court did not make such an "unworkable" finding at Stewart's sentencing and imposed restitution. Stewart does not identify, let alone brief, any actual challenge to the district court's jurisdiction to order restitution. It is apparent from the statute and the record that the district court did have subject matter jurisdiction to order restitution. Nor does Stewart demonstrate that the restitution order fails to conform to the character or term of punishment authorized by that statute. It clearly does conform.

4

Stewart's minimal briefing on this point has failed to persuade us that the restitution order imposed here constituted an illegal sentence.

*The restitution order here was not rendered unenforceable under* Alderson

Stewart relies heavily on his interpretation of *Alderson* to support his claim that his restitution order is an unenforceable advisory calculation solely for the benefit of the Kansas Prisoner Review Board (KPRB). Shortly (17 days) before the district court rejected Stewart's motion, and apparently unknown to that court, the Kansas Supreme Court issued its opinion in *Alderso*n. Alderson had been convicted of first-degree murder and was serving a life sentence. At sentencing the district court determined that $119,899.86 was a proper amount for restitution. It included the following in its journal entry: "'The Court finds that restitution is owed in this case, as set out below, and advises the Secretary of Corrections' Board of Pardon and Parole that defendant's release from incarceration should be made contingent upon defendant making restitution.'" *Alderson*, 299 Kan. at 150.

Well over 10 years after sentencing, and while Alderson was still in prison, the private corporation retained by the State to collect restitution made written demand on Alderson to pay his restitution. Alderson, like Stewart has done here, filed a motion in the sentencing court. Alderson requested a release from the restitution order based on its dormancy under K.S.A. 2013 Supp. 60-2403(d). The district court there, also relying on *Robards*, ruled that, since Alderson was in prison, the restitution was not yet due and therefore could not have become dormant. Alderson appealed. *Alderson*, 299 Kan. at 149.

Our Supreme Court pointed out that *Robards* was no longer good law, as the statutes had changed to allow a sentencing court to both impose incarceration and require restitution during incarceration. *Alderson*, 299 Kan. at 151. The statutes at issue in *Robards* did not permit the enforcement of restitution during incarceration. The *Alderso*n

5

court reasoned that, since the district court did not enter the required order under K.S.A. 2002 Supp. 21-4603d(b) directing payment of restitution during Alderson's incarceration, the restitution order could only become enforceable upon Alderson's parole. But such enforceability upon parole was not viable in Alderson's particular case: the district court ambiguously imposed the restitution by purporting to, but without authority to, require the restitution as a condition of parole. Only the KPRB has the authority to impose parole conditions. *Alderson*, 299 Kan. 150-51.

The *Alderson* court resolved Alderson's appeal in the following:

"We conclude that the district court did not enter an enforceable restitution judgment when it sentenced Alderson. It instead provided an advisory calculation of damages for the benefit of the Kansas Prisoner Review Board. There being no judgment of restitution, the judgment could not become dormant." 299 Kan. at 151.

The *Alderson* court then affirmed the district court, but for a different reason:

"When it denied Alderson's dormancy claim, the district court relied on *Robards*, 31 Kan. App. 2d 1138, and ruled that the statutory period to enforce the judgment would begin when he is released from prison. Because of statutory changes, *Robards* no longer accurately describes the law in this state. The district court was correct, however, in rejecting Alderson's petition seeking a declaration of dormancy. Because there is no pending judgment ordering Alderson to pay restitution, the district court had no jurisdiction to release an obligation on his part." 299 Kan. 151-52.

In spite of Stewart's contentions, *Alderson* is distinguishable from the present case. Here the district court did not presume to instruct the Department of Corrections to condition postrelease on Stewart's payment of restitution. The court only imposed a restitution amount. The ambiguity that rendered the parole-conditioned restitution unenforceable in *Alderson* is not present here. According to *Alderson*, an order by the

6

court to pay restitution during incarceration is only effective if the court declares that intention unambiguously. 299 Kan. at 151 (citing *State v. Bowers*, 239 Kan. 417, 428, 721 P.2d 268 [1986]). Otherwise, a restitution order is unenforceable during the period of incarceration. Since the district court made no such declaration in setting restitution in this case, Stewart was not required to make restitution payments while in prison. However, once Stewart is released from prison, the restitution order is enforceable.

Our interpretation of *Alderson* is consistent with that in *State v. Alcala*, 301 Kan. 832, 348 P.3d 570 (2015). There the Supreme Court summarized *Alderson'*s holding:

> "The district court did not order Alcala to pay a fixed amount of restitution per month, nor did it explicitly order Alcala to begin payments while incarcerated. This indicates further restitution will not be collected until he is paroled, if that ever occurs. See *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014) (restitution not due while prisoner incarcerated unless district court unambiguously declares contrary intent on the record)." 301 Kan. at 840.

Thus, even though the district court incorrectly relied on *Robards* to reach its decision, it nevertheless correctly denied Stewart any relief. Stewart was not ordered to pay restitution during his incarceration. He therefore could not be forced to pay on that restitution while he was incarcerated. The 10-year dormancy clock on his restitution would not begin to run until his release. Stewart essentially contends that, under *Alderson*, a restitution order can never be enforceable against one sent to prison who was not ordered to pay restitution during that incarceration period. We reject that contention.

There is yet another reason to support the district court's denial of relief to Stewart. Stewart's motion sought, according to its title, a "release" of judgment. That term has a special meaning under the provisions of K.S.A. 2013 Supp. 60-2403. The text of Stewart's motion did not include the entirety of the section regarding restitution

judgments. K.S.A. 2013 Supp. 60-2403(d), applicable at the time Stewart filed his motion, provided:

> "If a renewal affidavit is not filed or if execution is not issued, within 10 years from the date of the entry of any judgment of restitution in any court of record in this state, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. Except as provided in subsection (b), *when a judgment becomes and remains dormant for a period of two years, it shall be the duty of the judge to release the judgment of record when requested to do so.*" (Emphasis added.)

While it is true that a restitution judgment can go dormant after 10 years, the statute imposes no duty on the district court to declare it dormant. Further, the judgment debtor is not entitled to a judicial *release* of the judgment of record until the succeeding 2-year dormancy period has also expired. A creditor can revive a dormant judgment during the 2-year dormancy period by complying with K.S.A. 60-2404. Here, even if the judgment viability clock began to run at the time of Stewart's sentencing, the full 12 years in which the judgment is enforceable or dormant would not expire until January 23, 2016. Until then, Stewart's restitution would still be subject to revivor even if it was otherwise dormant. Thus, Stewart's motion for a *release* of judgment, under any circumstances, was premature.

Finally, we note that after the parties had filed their briefs the Kansas Legislature amended K.S.A. 2014 Supp. 60-2403 this year. L. 2015, ch. 53, Sec. 4, effective July 1, 2015. The legislature eliminated K.S.A. 2014 Supp. 60-2403(d) regarding the separate treatment of restitution judgments, and amended K.S.A. 2014 Supp. 60-2403(b) to provide that restitution judgments that have not become "void" (extinguished) as of July 1, 2015, should never be released of record.

Affirmed.

8